# IN THE COURT OF APPEALS OF IOWA

No. 23-1612
Filed August 21, 2024

**IN THE MATTER OF F.T.,**
**Alleged to Have a Substance-Use Disorder,**

**F.T.,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Jessica Noll, Judge.

A person found to have a substance-use disorder appeals from a civil commitment order. **AFFIRMED.**

Debra S. De Jong of De Jong Law Firm, P.C., Orange City, for appellant.

Brenna Bird, Attorney General, and Sarah Jennings, Assistant Attorney General, for appellee State.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

F.T. appeals from a court order committing her as a person with a substance-use disorder pursuant to Iowa Code chapter 125 (2023). We affirm, finding sufficient evidence to support commitment and that—assuming without deciding there is a right to effective counsel under chapter 125—F.T.'s attorney was not ineffective.

A court-ordered physician's report documented F.T. was diagnosed with a substance-use disorder as defined by the American Psychiatric Association—cannabis use disorder. The reporting physician concluded F.T.'s cannabis use was "exacerbating" her mental illness by causing her to be "manic, delusional, verbally aggressive, and threatening on unit." The physician also noted supporting facts, including that F.T. was "actively using cannabis," had a recent positive urinalysis test, and had a prior hospitalization. And the physician concluded F.T. was a danger to herself or others and would benefit from treatment to stabilize her and manage her medications.

In her affidavit seeking commitment, F.T.'s grandmother explained that F.T.'s cannabis use caused her to show symptoms of schizoaffective disorder. The grandmother wrote that cannabis caused F.T. to "engage[ ] in behaviors that put her safety at risk," such as halting her psychiatric medications and living on the street.

F.T.'s grandmother testified at the commitment hearing that F.T. has "extreme side effects" when she uses marijuana: "[s]he becomes paranoid, she gets delusions, she says things that aren't true, makes accusations, [and] she disappears and goes off on her own and we can't find her." The grandmother

described some of the side effects F.T. experienced as "mania" or a "mania state" that endangered F.T., as evidenced by her "jumping out of cars because she thought they were going to blow up." F.T.'s grandmother said she was "very frightened and very worried" about F.T.'s safety.

F.T. testified that she used marijuana but was not addicted. She claimed her marijuana use did not affect her daily life or cause side effects. And she admitted she had been previously committed for mental-health reasons. But she disputed her grandmother's testimony that she had discontinued mental-health treatment. During the hearing, F.T. told the court she recently saw a dead body on the street that was "scalped"; at one point she said it was her boyfriend but then she suggested it was someone else. She also indicated she believed she was in Wayne, Nebraska, rather than Sioux City, Iowa, and told the court she needed to be at a "pop up" art show rather than in treatment.

The district court found by clear and convincing evidence that F.T. had a substance-use disorder and ordered her commitment for inpatient treatment. Inherent in this resolution of contested facts, the district court credited the testimony of F.T.'s grandmother and the physician's report and rejected F.T.'s testimony.

F.T. appeals, asserting insufficient evidence supported her commitment and that her attorney rendered ineffective assistance. Our review of the sufficiency of the evidence is for correction of errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). And we review ineffective-assistance claims de novo. *In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa Ct. App. 2010).

**Sufficiency of the evidence.** Commitment of a person with a substance-use disorder under Iowa Code chapter 125 requires clear and convincing evidence the person: (1) has a qualifying, diagnosed substance-use disorder; (2) lacks sufficient judgment to make responsible decisions with respect to hospitalization or treatment because of the condition; and (3) presents a danger to self or others because of the condition. *See* Iowa Code §§ 125.2(16), .75, .82(4), .83; Iowa Ct. R. 13.14.

F.T. first contests the evidence of her substance-use disorder. That term is defined by statute as "a diagnosable substance use disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual of mental disorders published by the American psychiatric association that results in a functional impairment." Iowa Code § 125.2(16). In the context of commitments under chapter 229, we have found physician reports containing a diagnosis sufficient to meet that statute's requirements. *See In re S.S.*, No. 15-0494, 2015 WL 6508809, at *4 (Iowa Ct. App. Oct. 28, 2015). We think the same is true under chapter 125, and thus the physician's report here— which was necessarily credited by the district court—was sufficient to meet the first element. And even if the physician's report was insufficient on its own, the grandmother's testimony established at least a year of issues with F.T. using cannabis and not taking her psychiatric medications. This is not a case where, as F.T. alleges, the physician's report contained "no facts." While it may be sparse, there is enough in the report for our review, and we discern no legal error on the first element.

It's a little unclear whether F.T. challenges the second element concerning lack of judgment, but we briefly explore it. The physician's report concluded F.T. lacked sufficient judgment to make decisions about hospitalization or treatment, and we note again the district court necessarily credited this report. We also recognize F.T.'s statements at the hearing—where she did not recognize where she was, denied substance use in the past month despite a positive test, and expressed that she wanted to attend a "pop up" art show rather than seek treatment—tend to support that conclusion. As does her recent history of noncompliance with mental-health medication and treatment. *Cf. B.T.G.*, 784 N.W.2d at 797.

F.T. specifically challenges evidence of present dangerousness. On appeal, the State concedes that commitments under chapter 125, like their chapter 229 counterparts, require a recent overt act in addition to evidence that suggests future dangerousness. Here, the physician's report and testimony from the grandmother established that F.T.'s substance use led her to discontinue her psychiatric medications and begin experiencing symptoms of schizoaffective disorder. The grandmother described F.T.'s manic state—including jumping out of a car because of a hallucination or delusion it was about to blow up. And the physician opined that she was a danger to herself or others. This evidence is sufficient to predict future dangerousness and the incident with the car is a recent overt act. *Cf. In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986). We discern no error on the third element and find sufficient evidence supported F.T.'s commitment.

**Ineffective assistance.** F.T.'s final contention is that her appointed attorney was ineffective. To succeed on such a challenge, F.T. must prove that

her counsel breached an essential duty and that she was prejudiced to the extent she was denied a fair trial. *See B.T.G.*, 784 N.W.2d at 798. As we have in the past for commitments under chapter 229, we assume without deciding there is a right to effective counsel in civil commitment proceedings under chapter 125. *See In re C.J.*, No. 24-0244, 2024 WL 3518284, at *2 (Iowa Ct. App. July 24, 2024); *In re J.H.*, No. 12-1133, 2013 WL 1760183, at *3 (Iowa Ct. App. Apr. 24, 2013); *see also* Iowa Code § 125.78(1) (providing the respondent a right to a court-appointed attorney). Most of F.T.'s complaints are essentially procedural in nature, focused on the timing of events below or that the court file does not contain certain returns of service. She cites no case law establishing that she would be owed any remedy other than a continuance if these issues had been raised in the district court. We also observe that any information contained in filings F.T. did not receive before the hearing was communicated to her at the hearing, which undermines any claimed prejudice. On our de novo review, we do not find any of these alleged procedural deficiencies prejudiced F.T. to the extent she was denied a fair trial.

The most substantive ineffective-assistance complaint F.T. alleges is that her trial attorney did not require the physician authoring the report to personally appear for cross-examination. But there could be legitimate tactical considerations supporting that choice, including a reasonable fear that the physician's live testimony would be more damning and detailed than the sparse handwritten report. *See C.J.*, 2024 WL 3518284, at *2; *cf. State v. Yaw*, 398 N.W.2d 803, 807 (Iowa 1987) (finding trial counsel not ineffective for permitting child-sexual-abuse victims' testimony to be admitted by deposition rather than live testimony). On this record, F.T. has not overcome the presumption of counsel's competence. *See*

*State v. Majors*, 940 N.W.2d 372, 391 (Iowa 2020) (noting in criminal and postconviction cases "our presumption is that counsel performed competently unless the claimant proves otherwise by a preponderance of the evidence" and "[m]ore is required than a showing that counsel's trial strategy backfired or the case would have been tried differently by another attorney").

Last, to the extent F.T. advances a claim of cumulative error, and assuming without deciding such a claim exists in civil-commitment cases, we reject it. *See State v. Clay*, 824 N.W.2d 488, 501–02 (Iowa 2012) (performing a cumulative-error analysis in a criminal case). We discern no prejudice, independently or in the aggregate, that would warrant relief.

**AFFIRMED.**